UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-02399

FRED NEKOUEE, individually, :
:
        Plaintiff, :
:
vs. :
:
GUNBARREL SQUARE CENTER LIMITED :
LIABILITY COMPANY, a Colorado limited :
liability company; :
:
        Defendant. /
_____

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, GUNBARREL SQUARE CENTER LIMITED LIABILITY COMPANY, a Colorado limited liability company (sometimes referred to as "Defendant"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.    Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.    Defendant GUNBARREL SQUARE CENTER LIMITED LIABILITY COMPANY owns the real estate and the improvements thereon described as Lot 3 Gunbarrel Square Replat "A," County of Boulder, State of Colorado, commonly known as 6525-6545-6565 Gunpark Drive, Boulder, Colorado 80301 ("the Property").

3.    An UPS Store is located on the Property, with an address of 6525 Gunpark Drive, Suite 370, Boulder, Colorado 80301 ("UPS").

4.	Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of Property.   The Defendant's Property and UPS are located in and do business within this judicial district.

5.	 Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

6.	Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

7.	The Property is a shopping center.

8.	The Property is a place of public accommodation.

9.	UPS on the Property is a sales establishment.

10.	UPS is a place of public accommodation.

11.	Defendant is responsible for complying with the obligations of the ADA.

12.	Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs and hands, and requires the use of a wheelchair for mobility.

13.	 Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

14.	 Fred Nekouee visited the Property which forms the basis of this lawsuit on October 3, 2018; October 2, 2019; and March 5, 2020; and he bought goods and sought to avail himself of

the goods and services at Property on such dates.

15. Fred Nekouee visited and bought goods at UPS on the Property on October 3,2018; October 2, 2019; and on March 5, 2020.

16. Fred Nekouee visited and bought goods at the Subway restaurant at 5280 Spine Road, Suite 102, Boulder, Colorado 80301 on March 5, 2020.

17. Fred Nekouee attended a heavy equipment auction in Longmont, Colorado on August 1, 2018; October 3, 2018; May 8, 2019; October 2, 2019; and March 4, 2020.

18. Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

19. Fred Nekouee also visited the Longmont, Colorado area from February 3-6, 2019; May 7-10, 2019; September 30-October 2, 2019 and again from March 3-6, 2020.

20. Fred Nekouee plans to return to Property to avail himself of the goods and services offered to the public at the Property and at UPS.

21. The Plaintiff has definite plans to return to the area and to the Property and UPS in late September or early October 2020.

22. The Property and UPS are on the way from the heavy equipment auction and dealerships he visits and to the mountains and sight-seeing.

23. The Plaintiff likes the goods and services at UPS.

24. The Plaintiff plans to return to UPS for supplies and services.

25. For the reasons set forth in paragraphs 14-24 and 37, Fred Nekouee plans to return to Property and to UPS.

26. The Plaintiff has encountered architectural barriers at the Property and in UPS.

27. The barriers to access that the Plaintiff encountered at the Property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability

to access Property, and have impaired his use of the restrooms there.

28.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

29.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

30.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

31.     On his visit to the Property, the Plaintiff encountered excessively steep slopes in its parking lot and walking surfaces.

32.     The concrete sidewalk in front of UPS has a change in level greater than 0.5 inches.

33.     In the parking lot in front of UPS, the running slope of the access ramp in front of UPS is steeper than 1:12 and is steeper than 9%.

34.     The Plaintiff encountered and observed barriers to access in the men's restroom in UPS; and so, he also tried to use the women's restroom in UPS, in which women's restroom he also encountered and observed a barrier to access.

35.     The Plaintiff is deterred from visiting the Property even though he enjoys its goods, because of the difficulties he will experience there until the Property is made accessible to him in a wheelchair.

36.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the allegations in paragraph 43 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination

4

in violation of the ADA by the Defendant.

37.     Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at the Property but to assure himself that the Property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Property without fear of discrimination.

38.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

39.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

40.     Physical conditions that exist at the Property are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 43 below

41.     Preliminary inspections of Property show that violations of the ADA exist as set forth in paragraph 43 below.

42.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Property include, but are not limited to, those set forth in paragraph 43 below.

43.     At the Property:

**PARKING**

a.  (i) There are only two parking spaces for disabled patrons in the section of the parking lot in front of UPS, Yurihana Sushi Bar & Pan Asian Cuisine, Hair Salon, Sunflower Kids Art Studio, and Sancho's Restaurant at the Property.   (ii) There are only

two parking spaces for disabled patrons in this section of the parking lot and there should be a minimum of 5, one of which should be a van accessible parking space, in violation of Federal Law 2010; ADAAG § 208 and 208.3.1.   (iii) Due to the lack of parking spaces for disabled patrons, it was difficult for the Plaintiff and his driver to find a parking space for disabled individuals.   (iv) The actions required to restripe suitable parking spaces and to add appropriate signage are easily accomplishable and able to be carried out without much difficulty or expense.

    b.   (i) In the parking lot, the parking space for disabled patrons in front of Sancho's Restaurant has a running slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) This parking space for disabled patrons has a running slope that is steeper than 1:48 and that is steeper than about 4%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) each parking space for disabled patrons in front of UPS does not have upright signage with the International Symbol of Accessibility.   (iii) The running slope in this space made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space for disable patrons is easily accomplishable and able to be carried out without much difficulty or expense.

    c.   (i) In the parking lot, there are no parking spaces for disabled patrons in front of Subway and Boulder Cleaners.   (ii) This section of the parking lot does not have any parking spaces for disabled patrons, in violation of Federal Law 2010; ADAAG § 208.2. (iii) Due to the lack of parking spaces for disabled patrons in this section of the parking lot, it was very difficult for the Plaintiff to access Subway.   (iv) The actions required to provide parking spaces for disabled patrons by restriping the parking lot and providing signage, are easily accomplishable and able to be carried out without much difficulty or expense.

    d.   (i) In the parking lot in front of Subway and Boulder Cleaners there is no access ramp to these stores.   (ii) In the parking lot in front of Subway and Boulder Cleaners there is no access ramp to these stores, in violation of Federal Law 2010; ADAAG §§ 303.4 and 405.   (iii) Due to the lack of an access ramp, the Plaintiff had great difficulty moving in his wheelchair from the parking lot to enter Subway.   (iv) The action required to install an access ramp to make these stores accessible to disabled individuals who require a wheelchair for mobility is easily accomplishable and able to be carried out without much difficulty or expense.

    e.   (i) In the parking lot in front of Yurihana Sushi Bar & Pan Asian Cuisine, there is a change of level of greater than 0.5 inches from the access ramp to its entrance to the ramp landing.    (ii) This change of level from the access ramp to its landing is greater than 0.5 inches, in violation of Federal Law 2010; ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it made his wheelchair unstable and stopped the forward movement of his wheelchair.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

    f.   (i) In the parking lot, the running slope of the access aisle serving the disabled parking space in front of Sancho's Restaurant is steeper than 1:48 and is steeper than 3.1%.   (ii) The running slope of this access aisle is steeper than 1:48 and is as steep as about 6%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered the running slope in this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

g. (i) The running slope of the access ramp in front of Sancho's Restaurant is steeper than 1:12 and is steeper than 9%. (ii) The running slope of the access ramp in front of Sancho's is steeper than 1:12 and is steeper than 9%, in violation of Federal Law 2010; ADAAG § 405.2. (iii) Due to the steep running slope of this access ramp in front of Sancho's Restaurant along the accessible route from the parking space for disabled patrons to UPS, the Plaintiff required assistance to ascend and descend this ramp in his wheelchair. (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

h. (i) The running slope of the access ramp on the side of the walkway to Sancho's Restaurant shown in the photograph below is steeper than 1:12 and is steeper than 9%. (ii) The running slope of the access ramp to Sancho's is steeper than 1:12 and is steeper than 9%, in violation of Federal Law 2010; ADAAG § 405.2. (iii) Due to the steep running slope of this access ramp along the accessible route from the parking space for disabled patrons to UPS, the Plaintiff required assistance to ascend and to descend this ramp in his wheelchair. (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



i.   (i) The transition from the access aisle to the access ramp in front of Sancho's Restaurant has a change of level greater than 0.5 inches.   (ii) The transition from the access aisle to the access ramp in front of Sancho's has a change of level of greater than 0.5 inches, in violation of Federal Law 2010; ADAAG §§ 303.3 and 405.4.   (iii) While moving in his wheelchair in this access aisle toward this access ramp, the forward movement of Plaintiff's wheelchair was stopped and made his wheelchair was made unstable by this change in level.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The transition from the access aisle to the access ramp to the side of Sancho's Restaurant has a change of level greater than 0.5 inches.   (ii) The transition from the access aisle to the access ramp to the side of Sancho's has a change of level of greater than 0.5 inches, in violation of Federal Law 2010; ADAAG §§ 303.3 and 405.4.   (iii) While

moving in his wheelchair in this access aisle toward this access ramp, the Plaintiff's wheelchair was made unstable by this change in level.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) The concrete sidewalk in front of UPS has a change of level greater than 0.5 inches at the joint shown in the photograph below.   (ii) This walkway has a change of level greater than 0.5 inches, in violation of Federal Law 2010; ADAAG §§ 502.4.   (iii) While moving in his wheelchair the Plaintiff encountered this change of level and it made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



l.   (i) The running slope of the access ramp in front of UPS is steeper than 1:12 and is steeper than 9%.   (ii) The running slope of this access ramp is steeper than 1:12 and is as steep as about 14%, in violation of Federal Law 2010; ADAAG § 405.2.   (iii) Due to

the slope of this access ramp, the Plaintiff required assistance to ascend and to descend this ramp in his wheelchair.   (iv) The action required to reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) The running slope of the surface within 60 inches parallel from the outside of the entrance door to UPS is steeper than 1:48 and is steeper than 3.1%.   (ii) The running slope within the required maneuvering space of 60 inches from the outside of the entrance door to UPS is steeper than 1:12 and is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 404.2.4.4.   (iii) Due to this slope, the Plaintiff's wheelchair slipped sideways as he tried to enter UPS.   (iv) The action required to reduce the slope within this required maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.

**UPS**

n.   (i) The keys of the card reader at the sales counter in UPS are higher than 48 inches above the floor.   (ii) The keys of this card reader are higher than 48 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach the keys to this card reader due to their height above the floor.   (iv) The action required to relocate this card reader is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In UPS, the men's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 18 inches.   (ii) This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches and is only about 3 inches, in violation of Federal Law 2010; ADAAG § 404.2.4.   (iii) Due to this lack of

11

clearance, the Plaintiff required assistance to enter the men's restroom in his wheelchair. (iv) The action required to relocate an appliance is easily accomplishable and able to be carried out without much difficulty or expense.

p. (i) In the men's restroom in UPS, the space between the top of the toilet tank and the bottom of the rear wall grab bar is less than 1.5 inches. (ii) The space between the top of the toilet tank and the bottom of this rear wall grab bar is less than 1.5 inches, in violation of Federal Law 2010; ADAAG § 609.3. (iii) Due to the lack of adequate space between the top of the toilet tank and the bottom of the rear wall grab bar, the Plaintiff had difficulty using the rear wall grab bar to help transfer himself from his wheelchair to the toilet. (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

q. (i) In the men's restroom in UPS, the rear wall grab bar is less than 36 inches long. (ii) This rear wall grab bar is less than 36 inches long, in violation of Federal Law 2010; ADAAG § 604.5.2. (iii) Due to the short length and position of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet. (iv) The actions required to replace this rear wall grab bar and to properly place a new one are easily accomplishable and able to be carried out without much difficulty or expense.

r. (i) In the men's restroom in UPS, the lavatory drain and water supply pipes under the sink are not insulated. (ii) The drain and water supply pipes under this sink are not insulated, in violation of Federal Law 2010; ADAAG § 606.5. (iii) Due to the lack of insulation on these drain and water supply pipes, the Plaintiff risked skin burns and injury to his legs when he used the sink. (iv) The action required to insulate these drain and water supply pipes is easily accomplishable and able to be carried out without much

difficulty or expense.

 s. (i) In the men's restroom in UPS, the operation of the water faucet to the sink requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the water faucet to this sink requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010; ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried but could not operate the water faucet to this sink with a closed fist or loose grip.   (iv) The action required to replace this faucet with an ADA compliant faucet is easily accomplishable and able to be carried out without much difficulty or expense.

 t. (i) In the men's restroom in UPS, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 45 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.3.   (iii) Due to the height of this mirror above the floor, while sitting in his wheelchair, the Plaintiff could not see his full face in this mirror.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

 u. (i) In the men's restroom in UPS, the flush control to the toilet is not mounted on the open and wide side of the clear floor space.   (ii) This flush control to the toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010; ADAAG § 604.6.   (iii) Due to the location of the flush control, the Plaintiff tried but could not flush the toilet from his wheelchair.   (iv) The action required to replace the toilet tank with a flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.

 v. (i) In the men's restroom in UPS, the coat hooks are higher than 48 inches above

the floor.  (ii) These coat hooks are higher than 48 inches above the finish floor and are about 62 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.4.  (iii) Due to their height above the floor, the Plaintiff tried but could not hang an article of clothing on these coat hooks.  (iv) The action required to relocate these coat hooks is easily accomplishable and able to be carried out without much difficulty or expense.

44. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

45. The discriminatory violations described in paragraph 43 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

46. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

47. Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

48. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

49. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

50. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

51. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's places of public accommodation since January 26, 1992, then the Defendant are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

52. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

53. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property, UPS, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

   c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

   d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

     Respectfully submitted,

     s/Robert J. Vincze_____
     Robert J. Vincze (CO #28399)
     Law Offices of Robert J. Vincze
     PO Box 792; Andover, Kansas 67002
     Phone: 303-204-8207
     Email: vinczelaw@att.net

     *Attorney for Plaintiff Fred Nekouee*